## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JENNIFER WILLIAMS, as Next )
Friend for the Minor G.W., )
                     )
       **Plaintiff,**       )
                     )
**vs.**                )     **Case No. 19-CV-499-JFJ**
                     )
INDEPENDENT SCHOOL DISTRICT )
NO. 5, of TULSA COUNTY, )
OKLAHOMA )
                     )
       **Defendant.**     )

## OPINION AND ORDER

Before the Court is Defendant Independent School District No. 5 of Tulsa County, Oklahoma's ("School District") Motion for Summary Judgment (ECF No. 30). For the reasons stated below, the School District's Motion is **GRANTED** in its entirety, and the School District is entitled to judgment as a matter of law.[1]

### I.    Factual Background

Plaintiff Jennifer Williams brings this action as next friend for her daughter, Gracie Williams ("Gracie"), who was a minor at the time this action was filed but who has since reached adulthood. *See* ECF No. 13 (First Am. Compl.) at ¶ 1; ECF No. 30-2 (Gracie Williams Deposition) at 6:23-7:3. At the time of the precipitating incident in the fall of 2017, Gracie was a sophomore attending Jenks High School. ECF No. 30 at 4 (School District Undisputed Material Fact 1). During the fall semester of the 2017-2018 school year, Gracie sat next to Corbin West ("West") in a class called "Advisory" that was taught by Bill Roller. ECF No. 30 at 6 (School District

---

[1] The parties have consented to all proceedings before a United States Magistrate Judge, *see* ECF No. 16, and any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

Undisputed Material Fact 10).  Gracie knew West as a classmate, but she had not had any prior interaction with him that she considered inappropriate.  ECF No. 30 at 4-5 (School District Undisputed Material Facts 2-3, 6).  Several years earlier, Gracie had observed West participating in a game with other boys, which involved pointing a laser beam at girls' body parts.  Gracie did not report this to anyone at the School District and had not previously made any complaint about West to the School District.  *Id.* at 4 (School District Undisputed Material Facts 4-5).

### A.    Non-Sexual Incidents Occurring in January/May of 2017 ("Freshman Year Incidents")

In the previous schoolyear, West had been involved in two disciplinary incidents.  First, in January 2017, West pointed a cell phone at his teacher and said, "pow, pow," and displayed a shotgun shell.  *See* ECF No. 30-4 (West Disciplinary Record), at JSD 004490.  West was disciplined with 5 days of in-house suspension, and a note was made in his disciplinary file.  *Id.* Second, in May 2017, West pretended to hit a Muslim student on the back of the head with a 2-liter bottle of soda, and West told the teacher he was trying to "slice him like a Katana sword the way Al Qaeda does to us."  *Id.* at JSD 004482.  West was required to serve six days of in-house suspension and to undergo a mental health assessment.  *Id.*; ECF No. 34-2 (Luke Gray Deposition) ("Gray Dep.") at 70:10-18.  Luke Gray, an assistant principal at the School District's high school ("Mr. Gray"), testified that West was allowed to come back to school after the assessment, which meant he was deemed safe to be around other students.  Gray Dep. at 70:22-71:7.[2]

---

[2] Plaintiff "denies" this fact, stating that "the report of the mental health professional has not been produced."  ECF No. 34 at 4.  However, Plaintiff does not present any evidence to contradict Mr. Gray's testimony that West was cleared to return to school after the assessment.  The School District states in its reply brief that no such report was generated regarding West's condition, and it does not retain a copy of the form signed by the mental health professional.  ECF No. 37 at 2.  Based on Mr. Gray's uncontradicted testimony, the Court deems this fact to be uncontroverted.  *See* Fed. R. Civ. P. 56(c), 56(e); LCvR 56.1(c), (e).

**B.      Touching Incidents Occurring in September 2017 ("Touching Incidents")**

On September 12, 2017, Mr. Gray learned from Paula Lau, the student assistance program coordinator, that West had inappropriately touched a female student.  ECF No. 30 at 5 (School District Undisputed Material Fact 8).   Specifically, the female student, who wanted to remain anonymous, told Ms. Lau that she felt someone touch her buttocks while walking at the school campus.  When she turned around, West was there, and he reached up and touched her face.  ECF No. 34-5 (email from Paula Lau to Luke Gray dated October 25, 2017).  Mr. Gray spoke with West, who admitted touching the girl's face but denied touching her buttocks.  Gray Dep. at 82:9-16.  Mr. Gray talked with West about boundaries and appropriate conduct but did not impose any discipline or make a report in West's disciplinary file.  Gray Dep. at 79:18-82:16.

On Friday, September 15, 2017, a teacher reported to the Jenks High School's administration that two boys were approaching female students and touching them on their faces. Gray Dep. 58:4-59:24; ECF No. 30 at 6 (School District Undisputed Material Fact 9).  Mr. Gray interviewed approximately five female students, who confirmed that West, along with another boy, had approached them and touched their faces, sometimes making a comment such as, "Hello," "Hey, beautiful," or asking for their number.  ECF No. 34-5 (Luke Gray Notes).  On Monday, September 18, 2017, Mr. Gray interviewed West, who described the incidents as a "game" he was playing with a friend.  Mr. Gray reminded him not to touch strangers or violate their personal space.  *Id.*; ECF No. 30 at 6 (School District Undisputed Material Fact 9).  Mr. Gray also gave him a three-hour detention, and he contacted West's parents to explain the situation and consequence. ECF No. 34-5 (Luke Gray Notes); ECF No. 30 at 6 (School District Undisputed Material Fact 9); ECF No. 30-4 (Corbin West Discipline Report), at JSD 000550.

### C.      Sexual Attack of Gracie Occurring on September 20, 2017 ("Gracie Incident")

On September 20, 2017, during Gracie's Advisory class with West, West touched Gracie without her permission on her legs, breast, buttocks, and vaginal areas. ECF No. 30 at 7 (School District Undisputed Material Fact 15). Gracie was frightened and did not speak with anyone or make anyone aware of what West had done during Advisory class. *Id.* Advisory teacher Mr. Roller was not aware of the incident during the class. *Id.* at 7 (School District Undisputed Material Fact 16). Gracie went to her next class and did not report what had happened during Advisory. *Id.* at 7 (School District Undisputed Material Fact 17). At her next class, Pom, Gracie reported to her Pom coach what West had done. *Id.* at 8 (School District Undisputed Material Fact 18). Gracie's Pom coach immediately sent her to speak with a counselor, and she allowed Gracie's best friend in Pom to accompany her to the counselor's office. *Id.* at 8 (School District Undisputed Material Fact 19). Gracie and her friend went to the office of Kim Catterson, an academic counselor at the high school, and Gracie reported what had happened. *Id.* at 8 (School District Undisputed Material Fact 20). Ms. Catterson told Gracie she was brave and doing the right thing, and she asked Gracie to write a statement memorializing what had happened. *Id.* at 8 (School District Undisputed Material Fact 20). Ms. Catterson contacted Mr. Gray, who spoke with Gracie, learned about the incident, and began an investigation. *Id.* at 8 (School District Undisputed Material Fact 21).[3]

On the following day, September 21, 2017, Mr. Gray met with West and questioned him about the incident. He then contacted West's mother, who came to the school and met with Mr.

---

[3] In the response brief, Plaintiff "denies" this fact. *See* ECF No. 34 at 5. However, Plaintiff does not cite to any record evidence suggesting that the events occurred any differently than as stated in School District's Undisputed Material Fact 21, which derives from Gracie's and Mr. Gray's deposition testimony. Therefore, the Court deems these facts to be uncontroverted. *See* Fed. R. Civ. P. 56(c), 56(e); LCvR 56.1(c), (e).

Gray.  *Id.*  Mr. Gray informed West and his mother that West was suspended from school for the remainder of the fall semester and all of the spring semester.  *Id.*  Mr. Gray encouraged Gracie and her mother to file a report with the police about the incident with West.  *Id.* at 9 (School District Undisputed Material Fact 22).  Gracie met with Ms. Catterson several times following the incident with West, and Ms. Catterson referred Gracie to Ms. Lau, a licensed counselor.  *Id.* at 10 (School District Undisputed Material Fact 27).  Gracie met with Ms. Lau once and chose not to have further counseling sessions with her.  *Id.*  The School District also referred Gracie to professional counseling services available at no cost to her family, which Gracie did not utilize.  *Id.*

West's mother exercised her appeal rights under the School District's policies and appealed West's out-of-school suspension.  *Id.* at 9 (School District Undisputed Material Fact 23).  Pursuant to the School District's policy, West was permitted to continue with in-house suspension pending the outcome of the appeal process.  *Id.*  During that time, West reported to Mr. Gray's office before school and remained in the in-house suspension room during the school day.  *Id.*[4]  During that time, according to Plaintiff, Gracie saw West in the school hall on one occasion.  *See* ECF No. 36-9 (Jennifer Williams Deposition), at 23:23-25:1 (stating that, in the fall of 2017, Gracie "informed

---

[4] In the response, Plaintiff asserts that West was "completely unsupervised for a portion of each day that he was permitted on school grounds, causing Gray to become concerned that West might come into contact with [Gracie]."  ECF No. 34 at 6.  In support, Plaintiff cites Mr. Gray's testimony regarding the in-house suspension period.  *See* Gray Dep. at 109:10-110:17.  However, the cited testimony does not support Plaintiff's factual assertion.  Rather, Mr. Gray testified only that he did not know what West did "before he got to the school and then gets to my office," but that West had to report to him in the morning and go to the in-house room, which was a "highly structured environment," in which he was "removed from the student body" and was not permitted to go in the hall during passing periods or have lunch with the general student body.  Gray Dep. at 109:14-25.  Moreover, Mr. Gray testified that he had West report straight to his office *because* he was concerned about him having any contact with Gracie during the appeals period, and that he further encouraged Plaintiff to file an emergency protective order against West.  *Id.* at 110:15-25.

me [by call or text] that she turned the corner and saw [West] walking down the hall and she didn't know what to do").

West's out-of-school suspension was upheld at all levels of the appeals process and concluded on or around October 18, 2017, less than one month after the report of the Gracie Incident. ECF No. 30 at 9 (Undisputed Statement of Material Fact 23); ECF No. 34-9 (Suspension Appeal Documents), at JSD 00570-571. Gracie never had another class with West at the School District. ECF No. 30 at 9 (School District Undisputed Material Fact 24). Although Gracie's grades did not decline following the incident with West, it is disputed whether Gracie suffered absences from school as a result of the incident and whether she suffered other interference with her academic and extra-curricular activities as a result of the incident. *See* ECF No. 34 at 6-7 (Plaintiff's Response to School District's Undisputed Material Facts 26, 27).[5]

### D.    School District Policies

Jenks Public Schools had certain policies in place for the 2017-18 school year to address peer sexual harassment and bullying. ECF No. 34 at 8 (Plaintiff's Additional Material Fact 1). In particular, the school prohibits the sexual harassment of students by other students in and out of the classroom. *Id.* The policies further provide that student-to-student sexual harassment includes "unwelcome conduct of a sexual nature," defined to include "verbal or physical sexual advances, including subtle pressure for sexual activities [and] touching, pinching, patting, or brushing

---

[5] In her additional statement of material facts, Plaintiff appears to imply that the School District was aware of another sexual incident involving West, which occurred off school grounds on or around September 2017. *See* ECF No. 34 at 13 (Plaintiff's Additional Material Fact 14) (citing February 2018 news report); ECF No. 34-8 (February 2018 news report). The Court rejects any implication by Plaintiff that the School District was aware of this incident at any time relevant to Plaintiff's Title IX claims. Plaintiff has presented no evidence of that fact. To the contrary, Mr. Gray's notes suggest that he and the School District first became aware of the off-school incident in February 2018, which was well after West left campus following the affirmance of his suspension. *See* ECF No. 34-5 (Gray notes), at JSD 00544.

against."  ECF No. 34 at 9 (Plaintiff's Additional Material Fact 2).  Upon a report of sexual harassment, the site principal must initiate an investigation of the complaint under the supervision of the Administrator of Human Resources or designee, and a report should be made to the Superintendent regarding accusations, investigative procedures, and reconciliation of complaints. *Id.*  The school policies also provide that a range of behaviors at school will result in disciplinary action, including "[h]arassment, intimidation, or bullying, including gestures, written or verbal expression, . . . or physical acts," "[i]nappropriate behavior or gestures," and "[s]exual or other harassment of individuals including . . . students."  ECF No. 34 at 9-10 (Plaintiff's Additional Material Fact 3).

The School policies further prohibit "bullying," defined as "any pattern of harassment, intimidation, threatening behavior, physical acts, verbal or electronic communication directed toward a student or group of students, that results in or is reasonably perceived as being done with the intent to cause negative educational or physical results for the targeted individual or group and is communicated in such a way as to disrupt or interfere with the school's educational mission or the education of any student."  *See* ECF No. 34-10 (Jenks Public School Policies & Procedures 2017-18), at JSD 001075.  Bullying may include "sexual bullying," which includes harm of a sexual nature, including "making unwelcome sexual comments or gestures to or about the targeted person" and "committing a sexual act at school, including touching private parts of the target's body," and such conduct may also constitute "sexual harassment."  *Id.* at JSD 001076.  Students are permitted to make an anonymous report of bullying, and such report will be investigated as thoroughly as possible.  *Id.* at JSD 001077.  The policy explains, however, that "it is often difficult to fully investigate claims which are made anonymously and disciplinary action cannot be taken against a bully solely on the basis of an anonymous report."  *Id.*

School employees are required to report such acts to the school principal, and any staff member who witnesses, hears about, or suspects bullying is required to submit a report. *Id.* The principal or designee will investigate bullying reports. *Id.* In conducting an investigation, the designated official shall interview relevant students and staff and, in the event the investigator believes a criminal act may have been committed, the investigator will immediately call local law enforcement and the superintendent. *Id.* When specific allegations of harassment of a sexual nature are filed, the Office of Human Resources will conduct a thorough investigation. *Id.* Mr. Gray was responsible as a point person for implementing the anti-harassment and anti-bullying policies at Jenks High School, including conducting investigations and administering appropriate disciplinary measures. ECF No. 34 at 11 (Plaintiff's Additional Material Fact 6).

### E.  Plaintiff's Claims

Plaintiff filed her Complaint in this case on September 12, 2019 (ECF No. 1), and a First Amended Complaint on February 20, 2020 (ECF No. 13). In the First Amended Complaint, Plaintiff asserted three causes of action against the School District and another defendant, who has since been dismissed: (1) violation of Plaintiff's rights under Title IX of the 1972 Education Amendments, 20 U.S.C. § 1681(a); (2) violation of Plaintiff's right not to be deprived of equal protection of the laws on the basis of sex under the Fourteenth Amendment to the United States Constitution, actionable through 42 U.S.C. § 1983; and (3) negligent training and supervision of Jenks Public School employees, actionable through 42 U.S.C. § 1983. ECF No. 13 ¶¶ 28-39. The School District filed a Motion for Summary Judgment on all claims against it. ECF No. 30. Plaintiff filed a Response (ECF No. 34), and the School District filed a Reply (ECF No. 37). The School District's Motion is fully briefed and ripe for review, and the Court has conducted oral argument.

## II.      Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  As the court makes this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c); *see Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) ("Even though all doubts must be resolved in [the non-movant's] favor, allegations alone will not defeat summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Moreover, "[i]n a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted).   Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

## III.     Title IX Claim

Plaintiff asserts that the School District violated Title IX by responding with deliberate indifference to West's misconduct prior to attacking Gracie, and by responding with deliberate

indifference to the attack on Gracie itself.  The School District contends it is entitled to summary judgment on Plaintiff's Title IX claim, because the undisputed facts show that Plaintiff cannot satisfy three of the four elements of a Title IX claim.[6]  The Court concludes that the School District is entitled to summary judgment, because no reasonable juror could conclude that the School District acted with deliberate indifference in response to any known sexual misconduct incidents involving West.

### A.    Legal Standards

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  A funding recipient may be liable for damages under this statute in cases of student-on-student sexual harassment, but only where the funding recipient "acts with deliberate indifference to known acts of [sexual] harassment in its programs or activities."  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).  The Tenth Circuit has articulated a four-part test to establish a Title IX violation by a school district: (1) the school district had actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive, and objectively offensive, as to (4) deprive access to the educational benefits or opportunities provided by the school.  *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999)).

---

[6] The School District concedes that the third element – harassment that is "so severe, pervasive, and objectively offensive" – is satisfied, based on the nature of the Gracie Incident.  *See* ECF No. 30 at 14.

B.      **Actual Knowledge**

As the Tenth Circuit recognized in *Rost*, there is some disagreement among district courts as to whether notice of prior complaints of sexual harassment, as opposed to notice of the current sexual harassment for which redress is sought, triggers liability under Title IX. *See Rost*, 511 F.3d at 1119; *Escue v. Northern OK College*, 450 F.3d 1146, 1153 (10th Cir. 2006). For purposes of summary judgment, the Court applies the more permissive approach and assumes that allegations of prior acts of sexual harassment by West may suffice to trigger "actual knowledge" under Title IX.

Plaintiff argues the School District received actual knowledge of sexual harassment by West beginning with the Freshman Year Incidents and at least by the time of the Touching Incidents. ECF No. 34 at 17, 19-21. The School District concedes that Title IX was triggered when it received notice of the Gracie Incident, but argues that neither the Freshman Year Incidents nor the Touching Incidents were sufficiently sexual in nature to trigger Title IX's "actual knowledge" element. ECF No. 30 at 14-16. After analysis of all incidents, the Court finds triable questions of fact as to whether the Touching Incidents could be deemed sexual in nature and therefore serve as a trigger for Title IX liability.

1.      **Freshman Year Incidents**

As explained above, the Freshman Year incidents consisted of: (1) West pointing a phone at a teacher, saying "pow, pow," and displaying a shotgun shell; and (2) pretending to hit a Muslim student on the head with a bottle while making racially charged comments. These incidents have no sexual component. While Plaintiff argues that the School District had notice that a "dangerous predator" was among the student body following these two incidents, *see* ECF No. 34 at 17, Plaintiff points to no incidents prior to September 2017 that could possibly be construed as having

an element of sexual harassment or discrimination based on sex.  Therefore, these incidents did not trigger Title IX.  *See Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1309-1311 (10th Cir. 2020) (explaining that Title IX requires allegations of discrimination "on the basis of sex" and that gender-neutral harassment unrelated to sexual misconduct does not implicate Title IX).

### 2.    Touching Incidents

A triable issue remains as to whether the School District had actual knowledge of prior complaints of sexual harassment by West, beginning with notice of the September 12 and 15, 2017, Touching Incidents.  The first incident, involving one girl, was arguably sexual in nature, because the victim believed West touched her buttocks and was certain West touched her face.  Further, Ms. Lau's email to Mr. Gray describing this incident noted that the anonymous victim reported that West "liked her" when she was a freshman but she did not return his affection.  *See* ECF No. 34-5 (Gray Notes), at JSD 000549.

The second series of touching incidents involved a "game" of touching girls on their faces and making comments including "hey, beautiful" or asking for a phone number.  This could also be deemed sexual in nature.  The school's own sexual harassment policy indicates that those incidents could qualify as "unwelcome conduct of a sexual nature."  *See* ECF No. 34-10 at JSD 001067 (stating that such conduct may include "touching, pinching, patting, or brushing against, [and] comments regarding physical or personality characteristics of a sexual nature").  As indicated during oral argument, the Court rejects the School District's argument that these face-touching incidents were "non-sexual" in nature.  Unwelcome face-touching by a male student, accompanied by comments about a female's appearance and/or requesting her phone number, could be deemed sexual in nature.  The Court therefore finds a triable issue remains with respect to whether the Touching Incidents would give school officials actual knowledge that West was sexually harassing

female students prior to the Gracie Incident.

### C.    Deliberate Indifference

A school district is deliberately indifferent to acts of student-on-student harassment "only where the district's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Rost*, 511 F.3d at 1121 (cleaned up).[7]  This standard requires more egregious conduct than required for simple or even heightened negligence.  *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 407 (1997).  "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

As to remedial measures, schools need not expel every student accused of sexual harassment to protect themselves from liability, and victims of peer harassment "do not have a Title IX right to make particular remedial demands." *Rost*, 511 F.3d at 1123 (cleaned up).  Schools also are not required under this standard to "remedy" peer harassment; instead, they "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* (cleaned up). Similarly, as to a school's investigation, Title IX does not require "flawless investigations or perfect solutions." *Id.* (cleaned up).

The Supreme Court has indicated that, in applying the deliberate indifference standard, courts should not second guess school disciplinary decisions. *Davis*, 526 U.S. at 648.  In addition,

---

[7] The Court uses "cleaned up" in this decision to signal removal of extraneous, non-substantive citation clutter (such as brackets, quotation marks, and further citations) to improve readability without altering the substance of the quotation.  *See generally* Debra Cassens Weiss, *Justice Thomas Goes Rogue on the Bluebook with 'Cleaned Up' Citation – to the Delight of Appellate Lawyers*, ABAJournal (Mar. 15, 2021), https://www.abajournal.com/news/article/justice-thomas-goes-rogue-on-the-bluebook-with-cleaned-up-citation-to-the-delight-of-appellate-lawyers? (explaining origin of "cleaned up" citation).  *See Brownback v. King*, 141 S. Ct. 740, 758 (2021) (using new citation method).

a school district's failure to implement a sexual harassment policy or follow its own policy does not establish a violation of Title IX. *See Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 291-92 (1998); *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1340 (D. Kan. 2008) (explaining that the failure to implement sexual harassment policies and procedures is insufficient to establish Title IX liability "because this failure does not imply the school district's actual notice of any sexual harassment or its deliberate indifference thereto").

Whether a school district acted with deliberate indifference to peer-on-peer harassment may be resolved by summary judgment in appropriate cases. *See Davis*, 526 U.S. at 649 (stating that "there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law"); *Rost*, 511 F.3d at 1120-1124. The Court rejects Plaintiff's contention that the issue of the reasonableness of a school district's response "typically presents a factual issue ill-suited for resolution via summary judgment" in the context of a Title IX claim. ECF No. 34 at 13-14 n.2. Plaintiff cites no authority to support this claim, and Plaintiff misleadingly cites to cases that fall under Title VII, not Title IX. *See id.*

Applying the above standards, the Court concludes that no reasonable jury could conclude that the School District acted with deliberate indifference in response to (1) the Touching Incidents, or (2) the Gracie Incident.

### 1.    Touching Incidents

Plaintiff contends that the School District acted with deliberate indifference when it knowingly allowed West to harass and attack other students up until West attacked Gracie. Plaintiff argues that there remains a question of fact regarding whether the School District's "fail[ure] to respond in any appropriate way over a period of months of complaints of students' . .

in-school misconduct from other female students and teachers" was clearly unreasonable.  ECF No. 34 at 18.[8]

The Court concludes that there are no disputed issues of material fact, and that the School District's response to the Touching Incidents falls short of deliberate indifference as a matter of law.  The first incident involved an anonymous report that West touched a female student's buttocks and face.  West admitted only the face touching but denied the buttocks touching.  Mr. Gray responded to the incident by counseling West on appropriate behavior, personal boundaries, and not touching others without permission.  Although the School District did not conduct further investigation or impose greater discipline, this was a first report of sexual conduct by West.  Further, the report was made anonymously, making it more difficult to conduct further investigation or impose impactful discipline on West.  As explained by the Jenks School's bullying policies, it can be difficult for school officials to fully investigate claims that are made anonymously.  *See* ECF No. 34-10 (Policies), at JSD 001077.[9]   Considering the report, the

---

[8] Plaintiff further argues in the response brief that the School District failed to respond appropriately to the Freshman Year Incidents.  As explained above in Part III.B.1, the Court finds no triable issue regarding whether these incidents gave the School District actual knowledge of sexual harassment by West, because they were clearly not sexual or sex-based in nature.  However, even if these incidents were relevant to Title IX liability, the Court would conclude that no reasonable jury could find the School District's response was clearly unreasonable.  After the first threat incident, West received five days of in-school suspension.  After the second threat incident, the School District escalated its response by giving him six days of in-school suspension and requiring a mental health assessment and release from a mental health professional for him to return to school.

[9] Plaintiff suggests that the anonymous student did not come forward because West threatened her with "implied retaliation," pointing to Mr. Gray's handwritten notes in support.  ECF No. 34 at 20 (citing ECF No. 34-5 (Gray notes), at JSD 548).  Mr. Gray's notes describe a partially redacted incident, with notes stating, "assessment [with female name]," "address a student wrong," and "'You got me in trouble.'"  ECF No. 34-5 at JSD 548.  Corbin West's name is written below those notes.  *Id.*  Mr. Gray testified that only the portion of his notes starting with West's name had to do with West's disciplinary incidents.  *See* Gray Dep. at 77:23-78:16.  Based on these facts, no reasonable inferences can be drawn from Mr. Gray's notes that West threatened any student in relation to any of the sexual incidents.

response, and school policies, the School District could not be deemed deliberately indifferent to this first incident.

The second incident involved West and another student touching multiple girls' faces in the hallways, while making comments about them being beautiful and wanting their phone number. These reports were not anonymous, and Mr. Gray conducted a full investigation. After meeting with the students involved, Mr. Gray imposed discipline against West in the form of a three-hour detention. In hindsight, Mr. Gray may wish he had imposed greater discipline, viewed West as a more serious sexual threat to female students, or done more to prevent the Gracie Incident that occurred days later. However, the School District's response to the Touching Incidents cannot, individually or collectively, be deemed deliberate indifference under Title IX. As explained above, courts have repeatedly held that liability does not attach simply because a school district, with the benefit of hindsight, could have used "other and better ways to investigate or remedy student-on-student harassment," even if the school's response may demonstrate simple or even heightened negligence. *Spencer v. Univ. of New Mexico Bd. of Regents*, No. 15-CV-141 MCA/SCY, 2016 WL 10592223, at *4 (D.N.M. Jan. 11, 2016) (citing *Rost*, 511 F.3d at 1122). Here, even assuming the School District's failure to impose greater discipline on West in response to the Touching Incidents could be deemed negligent, there are no facts or circumstances that would support a jury's finding of deliberate indifference. *See Dallas Ind. Sch. Dist.*, 153 F.3d at 219 (explaining that even "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference").

As to school policies governing "unwelcome conduct of a sexual nature," Mr. Gray generally acted consistently with the policies by investigating the allegations and imposing discipline upon West in the form of detention. Plaintiff appears to argue that Mr. Gray failed to

follow the entirety of the policy, because he failed to report the Touching Incidents to the superintendent, counselor, or principal.  Ex. 34-10 at JSD 001068.  Even if a jury could find Mr. Gray failed to follow school policy in this manner, such a failure could not, standing alone, amount to deliberate indifference.  *See Rost*, 511 F.3d at 1122 (finding allegation that school district violated its sexual harassment policy "would sound in negligence, not deliberate indifference"); *Whitley v. Ind. Sch. Dist. No. 10 of Dewey Cnty.*, No. CIV-18-331-SLP, 2019 WL 7667329, at *8 (W.D. Okla. Apr. 22, 2019) (noting that, "just because the investigating school official allegedly failed to follow district policy does not mean that her actions were clearly unreasonable," because a "district's failure to comply with its regulations does not establish the requisite deliberate indifference") (quoting *Sanches v. Carrollton-Farmers Branch Ind. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011)) (cleaned up); *Gebser*, 524 U.S. at 291-92 (noting that the Court has never held the implied right of action under Title IX allowed recovery for violation of particular "administrative requirements," such as failure to implement a sexual harassment policy).  Mr. Gray was a high-level official at the school, he had authority to investigate and impose discipline against West, and he did so.  Failing to report these incidents to a superintendent or other official could not be deemed deliberate indifference in this case.

In sum, West's prior incidents of a sexual nature, which occurred in the days leading up to the Gracie Incident, were not ignored or allowed to continue.  The School District clearly took the incidents seriously and administered discipline consistent with the school policies and the seriousness of the incidents.  After the second known incident of touching multiple girls on their faces, Mr. Gray increased the seriousness of the response and imposed discipline.  The School District's response did not send any kind of message that West's improper conduct would be permitted at the school.  The next known incident involving West was the Gracie Incident, which

represented a steep escalation of conduct without an opportunity for the School District to take other remedial measures. *Cf. Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1314 (10th Cir. 2020) (noting that deliberate indifference may be shown by a "failure to act to halt the misbehavior" or by failure to try something else, if the authorities knew that what they had been doing had not sufficed to stop the harassment); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000) (finding that school's response to harassment by repeatedly "talking to the offenders" without results was clearly unreasonable, where school continued to employ this ineffective method and the harassing conduct continued and increased as a result). Considering the undisputed facts and construing them in favor of Plaintiff, no reasonable jury could conclude that the School District's response to West's inappropriate touching behavior was clearly unreasonable in light of the known circumstances.

### 2. Gracie Incident

Plaintiff additionally contends that the School District acted with deliberate indifference in its response to West's attack on Gracie. Specifically, Plaintiff argues that it was clearly unreasonable to allow West to remain in in-school suspension during his appeal period. Plaintiff argues that Gracie was subjected to further duress when she saw West on the school campus after the incident, as Plaintiff testified. *See* ECF No. 36-9 (Jennifer Williams Deposition), at 23:23-25:1 (stating that, in the fall of 2017, Gracie "informed me [by call or text] that she turned the corner and saw [West] walking down the hall and she didn't know what to do"). Plaintiff does not otherwise take issue with the sensitivity, speed, or severity of the School District's response to the Gracie Incident. For example, Plaintiff does not dispute that West had a right to be in in-school

suspension during the pendency of his appeal process, under the relevant school policies.[10]   Nor does Plaintiff allege that the appeals process, which lasted less than a month, was overly drawn out or otherwise improper.   Plaintiff only contends that it was clearly unreasonable to have West remain in in-school suspension given the possibility that he could encounter Gracie at the school building.

No reasonable juror could find that the School District's response to the Gracie Incident, including permitting West to be on school grounds for in-school suspension during the appeals process, was clearly unreasonable under the circumstances.   Mr. Gray testified that the in-school suspension was a "highly structured environment," and West was to report to Mr. Gray's office before school and then go to the in-house room each day.   Gray Dep. at 109:14-25.   West had a separate lunch and was not permitted to be in the hall during passing periods.   *Id.*   Because Mr. Gray was concerned about West having contact with Gracie during the appeals period, he had West report directly to his office and asked Plaintiff to file an emergency protective order.   *Id.* at 110:15-25.   Mr. Gray testified that he "wouldn't want [Gracie] to run into him, but that's also why he was supposed to be in the office."   *Id.* at 110:23-25.

The undisputed facts show that Mr. Gray took reasonable measures to ensure that West did not have an opportunity to encounter Gracie during the school day and that she was not vulnerable to continued harassment.   Accepting as true that Gracie saw West once in the hallway during his in-school suspension, this does not demonstrate deliberate indifference to the sexual battery against Gracie.   West had certain appeal rights under the policies, including in-school suspension pending

---

[10] Mr. Gray testified that, in the School District's suspension policy, "the parent has the right to request that the student remain in house until the appeal hearing."   Gray Dep at 108:7-10.   The policy itself is not part of the record, and the Court relies on Mr. Gray's testimony explaining the policy.

the appeal.  The school followed its procedures in ensuring West's rights were protected during the limited appeal period, while also attempting to protect Gracie from running into West during school.  *See* Gray Dep. at 108:6-25 (explaining appeal process).  As soon as the appeals process was exhausted and upheld against West, he was required to remain out of school for the duration of his suspension period.  *See* ECF No. 34-9 (Suspension Appeal Documents), at JSD 00570-571 (noting that West's out-of-school suspension was sustained on October 10, 2017, and October 18, 2017); Gray Dep. at 110:11-14 (stating that West's in-school suspension lasted "maybe two weeks").  Neither the policy itself that attempts to balance rights of the accuser and accused, nor the School District's application of its policy, can be viewed as deliberate indifference to continued harassment.  *Cf. Najera v. Ind. Sch. Dist. Of Stroud No. I-54 of Lincoln Cnty.*, No. CIV-14-657-R, 2015 WL 4310552, at *4 (W.D. Okla. July 14, 2015) (finding fact question remained regarding deliberate indifference element, where coach who had sexually harassed a student in the locker room had disobeyed orders to stay out of the locker rooms and school did not enforce its orders, and where the school's deficient response made the student victim "vulnerable to continued harassment").

Plaintiff further alleges that the school policies reflect deliberate indifference, because they place no requirement on administrators to follow up with their internal police department, even if they suspect a crime has been committed.  However, the Jenks School Policies provide that, in the event an investigator of bullying believes a criminal act may have been committed or there is a likelihood of violence, the investigator "will immediately call local law enforcement and the superintendent."  ECF No. 34-10 at JSD 001077.  In this case, Mr. Gray encouraged Gracie and her mother to file a police report regarding West's actions.  *See* ECF No. 30 at 9 (School District Undisputed Material Fact 22).  Here, Mr. Gray substantially fulfilled his obligations by

20

encouraging Gracie's family to file a report, which was not clearly unreasonable under the circumstances and given the nature of the incident.  In sum, no reasonable jury could find that any part of the School District's response to Gracie's attack was clearly unreasonable in light of the known circumstances.

Based on the absence of deliberate indifference to known incidents of sexual harassment by West, the School District is entitled to summary judgment on Plaintiff's Title IX claim.  The Court does not reach the final Title IX element – whether the School District's deliberate indifference to harassment deprived Gracie access to the educational benefits or opportunities provided by the school.

## IV.     Equal Protection Claim

Plaintiff alleges that the School District deprived Gracie of her constitutional right to equal protection of the laws under the Fourteenth Amendment, by failing to take adequate steps to stop the actions of West.  Plaintiff contends the evidence demonstrates that the School District's discriminatory actions are "representative of an official policy or custom of the municipal institution or are taken by an official with final policy making authority."  ECF No. 34 at 22.  In support, Plaintiff cites Mr. Gray's testimony that his disciplinary decisions regarding West's behavior were within the guidance of the Jenks school policies and procedures.  *See* Gray Dep. at 86:6-18.

The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  Denial of equal protection by a municipal entity or any other person acting under color of state law is actionable under 42 U.S.C. § 1983.  *See Murrell*, 186 F.3d at 1249.  Sexual harassment by a state actor can constitute a violation of the equal protection clause.  *Id.*  To establish school district liability for

sexual harassment under the Fourteenth Amendment, "a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." *Id.* A school district policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by a municipality's officers." *Id.* (cleaned up). Even absent such a policy, a school district may be held liable if a discriminatory practice is "'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Id.* (quoting *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996)).

First, as explained above in Part III, the School District's response to West's various misconduct incidents did not amount to deliberate indifference to sexual misconduct, which is fatal to this claim. Second, there is absolutely no evidence to support Plaintiff's allegation that the School District engaged in an official policy of deliberate indifference to sexual harassment. To the contrary, the evidence Plaintiff cites indicates that it was the School District's official policy not to tolerate sexual harassment, bullying, or other unwelcome conduct of a sexual nature. *See* ECF No. 34-10 (Jenks School Policies and Procedures). Plaintiff takes issue with Mr. Gray's handling of the various incidents of sexual misconduct West committed. *See* ECF No. 34 at 22-23. But Plaintiff admits that Mr. Gray's alleged mismanagement of West's misconduct would have indicated he "did not follow Jenks policy," and that West's actions were allowed to continue "due to a lack of enforcement of Jenks Policies due to improper training and adherence to those policies." ECF No. 34 at 23. This is fatal to Plaintiff's Equal Protection claim.

Plaintiff also points to no evidence of a "custom" at the School District to permit sexual harassment by West or other students. As explained above in Part III, West's various incidents of misconduct were swiftly addressed by the School District, with each act resulting in

correspondingly greater responses by the School District.  Plaintiff also offers no evidence indicating that Mr. Gray had the "final policymaking authority" required for purposes of establishing § 1983 municipal liability, based solely on a decision specific to West's situation.  *See Murrell*, 186 F.3d at 1250.  Accordingly, summary judgment is appropriate in the School District's favor on Plaintiff's § 1983 Equal Protection claim.

## V.    Negligent Supervision and Negligent Training Claims

Plaintiff alleges a further violation of Plaintiff's rights occurred under § 1983 due to the School District's negligent supervision and negligent training of its employees.  Plaintiff contends that, had the School District adequately trained and supervised its employees regarding appropriate responses to sexual harassment, Plaintiff might not have been assaulted.

Plaintiff's claims fail as a matter of law.  Liability under § 1983 must be predicated on a "deliberate" deprivation of constitutional rights and cannot be predicated on negligence, even gross negligence.  *Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992).  "Neither simple nor gross negligence implies an intentional and deliberate violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983."  *Id.* at 1399 n.11.  Plaintiff cites to no authority showing that negligent acts may form the basis of a § 1983 claim, and the Tenth Circuit has plainly stated otherwise.  *See Spencer v. Landrith*, 315 F. App'x 62, 65 (10th Cir. 2009) (stating that "[t]he theory of negligent supervision cannot provide a basis for liability under § 1983"); *Blueberry v. Comanche Cnty. Facilities Auth.*, 672 F. App'x 814, 817 (10th Cir. 2016) (stating that, "[i]n the context of a 'failure to train' claim under § 1983, even a showing of gross negligence by the municipality is inadequate to meet the state-of-mind requirement") (citing *City of Canton v. Harris*, 489 U.S. 378, 388 & n.7 (1989)).  Accordingly,

summary judgment is appropriate in the School District's favor on Plaintiff's § 1983 negligent supervision and negligent training claims.

## VI.    Conclusion

For the reasons detailed above, Defendant School District's Motion for Summary Judgment (ECF No. 30) is **GRANTED**.

**SO ORDERED** this 27th day of April, 2021.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**